IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RUSSELL J. VICTOR, JR.,            )
                                    )
    Plaintiff,                      )
                                    )
  -vs-                              )    Civil Action No. 14-1605
                                    )
CAROLYN W. COLVIN,                  )
COMMISSIONER OF SOCIAL SECURITY,    )
                                    )
    Defendant.                      )

AMBROSE, Senior District Judge.

## OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Russell J. Victor, Jr. ("Victor") filed an application for Supplemental Security Income ("SSI") on August 19, 2011, alleging a disability beginning on July 28, 2011 due to coronary artery disease, hypolipidemia and hypothyroidism. (R. 157, 161) The claims were denied initially on February 7, 2012. (R. 15, 85-88) Pursuant to his request, a hearing was held on March 29, 2013. (R. 35-60) A vocational expert appeared and testified. (R. 20) The ALJ denied the claim by written decision dated May 13, 2013 (R. 12-34) Victor requested review by the Appeals Council, which was denied. He then brought this action seeking judicial review pursuant 42 U.S.C. § 405(g).

Before the Court are Cross-Motions for Summary Judgment. (Docket Nos. [10] and [12]). Both parties have filed Briefs in Support of their Motions. (Docket Nos. [11] and [13]). After careful consideration of the submissions of the parties, and based on my Opinion set forth below, the ALJ's decision is affirmed.

### I. BACKGROUND

Victor was born on December 31, 1964 and was 46 years old at his alleged disability

onset date. (R. 157) Victor completed the twelfth grade and has previous work experience as a cook, laborer, machine operator, technician and carpet installer. (R. 185) He is divorced and does not have any children living with him. (R. 41) At the time of the hearing he received food stamps and had a medical card. (R. 41) He has a past history of substance abuse but has been clean for 14 years. (R. 43) Victor has a driver's license and drives unless he is taking medication which advises against it. (R. 43) Victor also does grocery shopping, although he leans on the cart in order to alleviate back pain. (R. 47) In terms of household chores, he will help with dishes, but again uses the sink as a prop to help with his back pain. (R. 49) In September of 2011, Victor reported that he exercises by walking up and down the stairs a few times a day. (R. 171) He also noted that he is able to spend a few hours cleaning his home and do his laundry. (R. 172) Victor attends flea markets and auctions approximately once a month. (R. 174) Victor uses a cane to help get around, but that cane has not been prescribed by a physician. (R. 48, 23)

As stated above, the ALJ concluded that Victor has not been under a disability within the meaning of the Social Security Act since August 19, 2011, the date the application was filed. (R. 29) Specifically, the ALJ determined that Victor had not engaged in substantial gainful activity since the application date and that Victor's degenerative disc disease, coronary artery disease, GERD with hiatal hernia, hypothyroidism, fibromyalgia, obesity and a history of polysubstance abuse, now in remission, constituted severe impairments, but that those impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18-19) The ALJ further concluded that Victor had the residual functional capacity to perform sedentary work with certain limitations. (R. 22-27) Further, although he was unable to perform his past relevant work, the ALJ concluded that, considering Victor's age, education, work experience and RFC, there were jobs that exist in significant numbers in the national economy

that Victor could perform. (R. 28-29) Consequently, the ALJ found that Victor was not disabled and he denied the claim. (R. 29)

Victor takes issue with the ALJ's decision in two respects. First, he contends that the ALJ failed to give appropriate weight to his treating physician's opinion. Second, he urges that the ALJ evidenced bias. I reject both contentions.

## II. <u>LEGAL ANALYSIS</u>

### A) Standard of Review

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Additionally, the Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,*

786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

**B) Discussion**

1. Treating Physician Doctrine

Victor believes that the ALJ erred by giving "little weight" to Dr. Mercado's opinion from the Medical Source Statement and "great weight" to the opinions of state agency consultants Dr. Fox and Dr. Milke. The longstanding case law within this Circuit is that the report of a treating physician should be accorded greater weight than that of a non-examining consultant.

4

*Brownawell v. Comm'r. of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008). This is true particularly if that physician's treatment record or opinion "reflects expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000), *quoting*, *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). Indeed, "[i]t is axiomatic that the Commissioner cannot reject the opinion of a treating physician without specifically referring to contradictory medical evidence." *Moffatt v. Astrue*, 2010 U.S. Dist. LEXIS 103508 at * 6 (W.D. Pa. 2010). If a "treating source's opinion as to the nature and severity of a claimant's impairments is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record,' it will be given 'controlling weight.'" *Wiberg v. Colvin*, Civ. No. 11-494, 2014 WL 4180726 at * 21 (D. Del. Aug. 22, 2014), *quoting*, 20 C.F.R. § 404.1527(c). "[T]he more consistent an opinion is with the record as a whole, the more weight [the ALJ generally] will give to that opinion." 20 C.F.R. § 416.927(c)(4). That is, unless there is contradictory evidence, an ALJ may not reject a treating physician's opinion. An ALJ's own credibility judgments, speculation or lay opinion is not sufficient. *Wiberg*, 2014 WL 4180726 *citing*, *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). The Court of Appeals for the Third Circuit explains:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Social Sec. Admin.,* Civ. No. 10-2517, 2010 WL 5078238 at * 5 (3d Cir.

Dec. 14, 2010).

The question before me then is whether the ALJ's rejection of Dr. Mercado's Medical Source Statement runs afoul of these principles. The opinion Dr. Mercado offered in his Medical Source statement must have been "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record" in order to be given "controlling weight." After careful consideration, I conclude that the ALJ did not err in declining to give the report controlling weight.

It should be noted that the Medical Source Statement is merely a fill-in-the blank form. Dr. Mercado's report was not accompanied by any written support for his conclusions. It is well established that form reports are weak evidence. *See Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986) (indicating that where a RFC analysis is not accompanied by a thorough written report, the reliability of such a form is suspect); and *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (stating that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best."). Consequently, Dr. Mercado's conclusions regarding Victor's ability to work are weak evidence at best.

Further, the ALJ's decision to give the Medical Source Statement "little weight" is supported by substantial evidence of record. Specifically, as the ALJ stated, Dr. Mercado's own notes were at odds with the conclusions offered in the report. For instance, although Dr. Mercado diagnosed Victor with fibromyalgia, CAD, memory loss, anxiety and depression, and identified Victor's pain as "severe low back pain," "pain in joints" and "stiffness in all joints" with positive objective signs of reduced range of motion, reduced grip strength, reflex changes, impaired sleep, weight change, positive straight leg raising test, abnormal posture, tenderness, swelling, and muscle weakness, Victor presented at office visits as "well developed" and "well nourished" and without any signs of being in "acute distress". (R. 697, 702, 708, 715, 721, 726,

6

732, 737, 742, and 748) Additionally, a review of the office notes indicates that Dr. Mercado's treatment recommendations were routine and consisted of prescriptions, moist heat, myofascial release and massage. (R. 657-93) Further, Dr. Mercado's notes indicate that those treatments were successful. (R. 663, 667, 671, 675 – i.e., demonstrating that pain level before treatment was "7" and after treatment was "3")

In addition to being inconsistent with his own treatment notes, Dr. Mercado's conclusions were, as the ALJ detailed, at odds with the treatment notes authored by other treating physicians. For instance, Dr. Mercado referenced Victor's coronary artery disease ("CAD") as one of his diagnoses. (R. 792) Yet Victor's cardiologist, Dr. Ryan, indicated that the cardiac condition did not place any restrictions on Victor's ability to function. (R. 479-80) Dr. Ryan encouraged Victor to follow a low-fat diet, to cease smoking and to exercise. Victor remained non-compliant with Dr. Ryan's directions. (R. 474, 804, 814, 816, 809-812) A November 23, 2012 chest x-ray indicated "[n]o evidence of acute cardiopulmonary disease." (R. 829) On November 26, 2012, Victor had a cardiac catheterization, angioplasty and stent replacement. (R. 825-6) Dr. Michael Burley indicated that Victor would benefit the most from this surgery by, among other things, absolutely ceasing tobacco use and maintaining ideal body weight. (R. 826) A January 2013 MRI of his heart did not reveal any evidence of acute or chronic pericarditis or aortic stenosis; there was normal pulmonic valve motion and flow; the great vessels were of normal size, configuration and anatomic position; both the left and right ventricles were of normal size and systolic contractility. (R. 820) In short, no specialist treating Victor for his coronary artery disease ever indicated that his CAD presented any type of impairment which would have limited Victor's ability to work.

Dr. Mercado also cited to "low back pain" as one of Victor's debilitating conditions. (R. 792) The ALJ looked to the reports of Kate Paylo, D.O., who treated Victor for pain

7

management. As the ALJ noted, Dr. Paylo treated Victor for approximately one year with prescriptive medicine and physical therapy. An MRI of the lumbosacral spine was negative for any degenerative disk disease or radiculopathy. (R. 583) An MRI of the lumbar spine was found to be within normal limits. (R. 586) Victor declined to participate in the EMG nerve conduction study that Dr. Paylo ordered. (R. 589) Additionally, Victor presented with 5/5 strength in both the upper and lower extremities. (R. 592) In January of 2013, Victor reported to Dr. Paylo "improved quality of life as well as improved level of function with the current medication regimen as prescribed by his PCP." (R. 645) He also denied any side effects or complications from his medications. Again, although the record is replete with Victor's complaints of pain, it is bereft of any physician other than Dr. Mercado who opined that Victor's back pain caused any disabling impairment.

The ALJ also reviewed the treatment notes related to Victor's gastrointestinal problems. Dr. Raja Chadalvada and Dr. John Smith, Jr. both treated Victor for this issue. Dr. Chadalvada noted that a video swallow done in January 2012 revealed no abnormal findings. (R. 639) He advised Victor to quit using tobacco, to modify his diet and to lose abdominal fat. (R. 639) He maintained Victor's prescription regimen. In 2013, Dr. Smith diagnosed a hiatal hernia as present, with a normal stomach and normal duodenum. (R. 882) He too maintained the prescription medications. (R. 882)

In short, Dr. Mercado's conclusion that Victor's back condition, heart condition, pain and gastrointestinal issues caused him to be incapacitated from work is at odds with the conclusions of Victor's other treating physicians. None of those physicians opine that Victor has a debilitating condition. Further, Dr. Mercado's conclusion that Victor's mental impairments preclude him from work is contradicted by the opinions offered by state agency mental health expert Ray Milke, Ph.D. and by state agency physician Paul Fox, M.D. Dr. Milke concluded that

8

the record did not indicate any evidence of a medically determinable mental impairment. (R. 65) Dr. Fox considered: Victor's daily activities; the indication that his symptoms improved with treatment; and the observation by field office employees during interviews of Victor that there were no visible signs of limitations, and found that Victor was able to work with certain physical and environmental restrictions. (R. 67-68)[1]

Consequently, I find that substantial evidence supports the weight that the ALJ accorded Dr. Mercado's Medical Source Statement as well as the weight given to the opinions offered by the state agency consultants.

2. Bias

Victor urges that the ALJ was biased because he "was predisposed to discount" Victor's credibility. *See ECF No.* [11], p. 14. He bases this allegation on the fact that the ALJ noted that Victor has a "history of polysubstance abuse, now in remission," as well as the ALJ's comment that Victor's "poor work record" demonstrated a "lack of motivation to work." Id., p. 14-15.[2] According to Victor, the ALJ's comments are illustrative of his inclination to view Victor in the "worst light possible." Id., p. 14. After careful consideration, I find the contentions to be unpersuasive.

---

1 Victor argues that the opinions offered by Milke and Fox should be discounted because they were rendered before a substantial amount of medical evidence was available. Victor cites to *Moffat v. Astrue*, Civ. No. 10-226, 2010 WL 3896444 at * 6 (W.D. Pa. Sept. 30, 2010) for the proposition that "[a]n assessment provided by a non-examining medical consultant is of limited probative value where the record indicates that the consultant was unaware of countervailing evidence." I do not find Victor's argument persuasive though because even if the decisions were rendered before some of the medical evidence, there is no indication that any such evidence was countervailing. The opinions rendered by Dr. Fox and Dr. Milke are consistent with the majority of that evidence, save for the Medical Source Statement prepared by Dr. Mercado. The ALJ's rejection of Dr. Mercado's opinion is affirmed for the reasons set forth above.

[2] Victor attempts to buttress his "bias" argument by noting that the ALJ found only his history of polysubstance abuse, now in remission, to be a "severe impairment" at the second step of the five step analysis. According to Victor, he had additional mental health conditions such as PTSD, Antisocial Personality Disorder and Depressive Disorder. See ECF Docket No. [11], p. 14. I do not read Victor's statements in this regard as a challenge to the ALJ's findings under the second step as to what constitutes a "severe impairment." To the extent that Victor intended to raise such an argument, I decline to address it as it would be a woefully inadequate challenge to the ALJ's findings regarding "severe impairment."

Clearly, a "Social Security claimant has the right to a fair hearing before an impartial ALJ." *Blasucci v. Colvin*, Civ. No. 13-5218, 2014 WL 5286526 at * 6 (D. N.J. October 15, 2014), *citing Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). "However, the Court will presume that the ALJ was not biased unless a plaintiff shows that there was a conflict of interest or some other specific reason for disqualification." *Blasucci*, 2014 WL 5286526 at * 6, *citing, Schweiker v. McClure*, 456 U.S. 188, 195, 102 S. Ct. 1665, 72 L.Ed.2d 1 (1982). Victor bears the burden to overcome the presumption of impartiality. *Id., citing Schweiker*, 456 U.S. at 196. "A party asserting bias must show that the behavior of the ALJ was 'so extreme as to display clear inability to render fair judgment.'" *Roberson v. Colvin*, Civ. No. 13-1183, 2014 WL 4258306 at * 4 (W.D. Pa. August 26, 2014), *citing, Liteky v. United States*, 510 U.S. 540, 551, 114 S. Ct. 1147, 127 L.Ed.2d 474 (1994).

Victor has not discharged this burden. The ALJ's statements do not suggest bias or an inability to render fair judgment. Indeed, the ALJ's notation regarding Victor's history of polysubstance abuse, now in remission, is accurate. Second, the ALJ's consideration of work history was entirely appropriate. *See* 20 C.F.R. § 416.929 (c)(3) (instructing that a claimant's work history will be considered); see also Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998) (rejecting the contention that the ALJ demonstrated bias by referencing the claimant's poor work history, and stating that, "[j]ust as a good work history may be deemed probative of credibility, poor work history may prove probative as well.")

Simply stated, I am unconvinced that the ALJ's remarks evidenced any bias.

### III. **CONCLUSION**

After a thorough review of the record and careful consideration of Miller's arguments, I find that no basis for vacating or remanding the ALJ's decision. The decision is affirmed.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RUSSELL J. VICTOR, JR.,           )
                                  )
    Plaintiff,                    )
                                  )
  -vs-                            )      Civil Action No. 14-1605
                                  )
CAROLYN W. COLVIN,                )
COMMISSIONER OF SOCIAL SECURITY,  )
                                  )
    Defendant.                    )

AMBROSE, Senior District Judge.

## ORDER OF COURT

Therefore, this 12th day of May, 2015, it is ordered that Plaintiff's Motion for Summary Judgment (Docket No. 10) is denied and Defendant's Motion for Summary Judgment (Docket No. 12) is granted.

It is further ordered that the decision of the Commissioner of Social Security is hereby affirmed.

                        BY THE COURT:

                        /s/ Donetta W. Ambrose
                        Donetta W. Ambrose
                        United States Senior District Judge